Bosworth, J.
(Dissenting.)—The bark Roman, was chartered for a voyage from New York to Buenos Ayres, and thence, or from Montevideo to a port in the United States between New Orleans and Boston, or to a port in Great Britain or in the English Channel between Havre and Hamburgh, both included.
The voyage has been performed, and the practical question is, to what compensation are the owners entitled, by the terms of the charter party.
The clauses fixing the compensation to be paid, require that a cargo of 200,000 feet of white pine lumber shall be carried from New York to Buenos Ayres, freight free.
That the defendants shall provide at Buenos Ayres or Montevideo, “ a full and complete cargo of dry hides, with horns for small stowage if required,” and shall pay “for the hides, six pounds sterling with (5 per cent) five per cent primage per ton of 2,240 lbs., free of all commissions, payable in cash, without credit or discount. If other goods are shipped, freight to be at proportionate rates. Lining hides free of freight.”
Instead of shipping 250 tons of dry hides, which the bark could have carried, (there being none which could be procured) 334 tons of bones and bone-ash, making a full cargo, were shipped and delivered at the port of discharge.
What is meant by “ proportionate rates,” of freight to be paid on other goods, if shipped ?
If, as the defendants contend, the customary or actual rate then charged at Buenos Ayres on a cargo of dry hides from that place to the port of discharge is to be first ascertained, and *469 then the rate on the cargo actually shipped, and if the latter is then to be enhanced in such proportion as the contract rate for carrying- the dry hides, exceeds that which shall be ascertained to have been the current actual rate for carrying them, then it was left by the charter party, entirely uncertain how much it would be the duty of the defendants to pay or the right of the plaintiffs to claim. The amount earned on that theory, on the cargo actually shipped, is over $3,000 less than would have been earned by carrying a cargo of dry hides. Had the cargo been something else thán bones and bone-ash, the loss of the ship owner, on this theory, might have been still greater. On this theory, the amount to be paid cannot be ascertained by any information furnished by the terms of the charter party alone, even when the number of tons of the cargo actually carried, and the number of tons of hides that could have been carried have been determined by actual weight, or have been agreed upon.
The further questions also arise, what was, at the time, the usual or fair price per ton for carrying dry hides from the port at which they were to have been.shipped to the port of discharge, and what of the cargo actually shipped? And in case of disagreement between the parties, as to these two matters, how is the question to be settled ?
To find any basis for the defendants’ theory, it becomes necessary to interpolate into the contract, a reference to the actual freight at the time, on dry hides, and on the cargo actually carried from Buenos Ayres to the port of discharge, in order to make them subjects of consideration and comparison, in ascertaining and stating the proportion, provided for by the contract.
But treating the contract as one which determines the price to be paid for the voyage (on ascertaining the actual weight of a full cargo of dry hides); and as specifying all the subjects to be considered, in ascertaining and stating the “proportionate rates,” if other cargo should be shipped, the contract leaves it substantially certain what was to be paid for the voyage, no matter what might be the cargo carried.
I think the fair meaning is that, whatever might be the cargo shipped, (and the defendants, although agreeing to furnish a full cargo of dry hides, were to be permitted to ship something else, whether hides could or could not be procured,) the defendants *470 were to pay such a rate of freight, that the cargo (whatever it might be) at such rate, would produce the same sum total in dollars or pounds sterling, as a full cargo of dry hides at six pounds sterling per ton, of 2,240 lbs., would produce.
It was not known precisely, without going into an arithmetical calculation, how many tons of dry hides the bark would carry; but it was known nearly enough for all practical purposes, .and sufficiently so to advise both parties about what sum the vessel would earn. Not knowing the precise sum to be paid, if a cargo of dry hides should be furnished, instead of ascertaining by arithmetical calculation to what sum it would amount, and. inserting that as the one to be paid whatever might be the cargo, the clause was inserted that if cargo other than dry hides should be furnished, freight should be paid at a rate which would be in such proportion to the whole thereof, as six pounds sterling per ton of dry hides is to the whole number of tons thereof, making a full and complete cargo.
The contract furnishes all the data necessary to be known to state the proportion and ascertain the result intended by both parties, except the precise number of tons of hides making a full cargo, and the number of tons of other cargo actually carried, or of the tons of register measurement which it required for proper stowage.
If dry hides had been carried, their actual weight was to be ascertained, and the price to be paid fixed, by multiplying it by the specified rate.
There are many considerations which support this view of the contract, as being the correct one, and the one in the actual contemplation of the parties. They all resided in New York, and the contract was made there. There is nothing to show that either of them knew the actual rate" of freight then charged at Buenos Ayres for carrying dry hides thence to Great Britain, or to some port between New Orleans and Boston, or that they had any reference to any such matter in making the contract. Neither is there anything to show that they knew what kinds of cargo there was most reason to suppose could be furnished, if hides could not be. The contract covers the whole voyage, and the freight to be paid for carrying dry hides, though nominally paid for the hides only, included, in the intent of the parties, an *471 agreed compensation for carrying the lumber. On the defendants1 theory, if they could not procure dry hides, nor a full cargo of any kind, it is not obvious but that it might so happen that cargo enough might not be furnished at Buenos Ayres to compensate for carrying the 200,000 feet of lumber to that place from Hew York. If¡ contrary to the expectation of the parties, neither dry hides nor other cargo could have been procured, to what compensation would the plaintiffs have been entitled ?
By the natural and just meaning of the charter party, the defendants took the risk of being able to furnish a cargo. at Buenos Ayres. They secured the transportation from Hew York to and the delivery at that place of 200,000 feet of lumber. They were to furnish a full cargo of dry hides at that place, and the price per ton of 2,240 lbs. was stipulated. This was to compensate for the whole voyage. To what aggregate sum that would amount, could not be stated precisely, without entering into an arithmetical calculation. The defendants did not wish to be compelled to ship hides, if none could be procured for the purpose. The ship-owners were willing that the defendants should ship what they could procure, if they could not obtain hides, on being paid the same sum for the vessel for the voyage.
A careful consideration of the contract, convinces me, that its terms show this to be the intent and understanding of the parties. ■
The defendants covenant, absolutely and unconditionally, to provide and furnish at Buenos Ayres, or Montevideo “ a full and complete cargo of dry hides, with horns for small stowage if required;” and second, they “further engage to pay,” . . . “forth& charter or freight of the said vessel during the voyage aforesaid, in the manner following, that is to say:
“ For the lumber, freight free.
“ For the hicks, six pounds sterling, with (5 per cent) five per cent primage per ton of 2,240 lbs. free of all commissions, payable in cash, without credit or discount. If other goods are shipped, freight at proportionate rates.
“ Lining hides free of freight.”
The unconditional covenant to furnish hides, and a full and complete cargo of hides, and to pay six pounds sterling per ton of 2,240 lbs. on a full and a complete cargo, is a provision for *472 ascertaining, substantially, a lump sum to be paid for the round; its precise amount to be ascertained by computing the freight which would be payable for a full cargo of dry hides at the rate specified.
This is a common form of a charter party, which provides a lump sum for a whole voyage, when by the terms of the instrument the whole freight is made payable on the homeward cargo. (Gilkison v. Middleton, 40 Eng. L. and Eq., 295; and see Wilson v. Hicks, id., 511.)
The “ proportionate rates ” of freight to be paid “ if other goods are shipped,” are to be fixed, so as to secure the compensation thereinbefore, (in the charter party,) covenanted to be . paid “for the charter or freight of the said vessel during the' voyage aforesaid.”
That is, “ if other goods- are shipped” to make a part only of a return cargo, they are to pay the same proportion of the whole price as the space they occupy would have produced, if filled with dry hides. If in addition to hides, various binds of merchandise compose a part of the homeward cargo, the same rule of proportion is to be applied to such various kinds of cargo.
Upon any other construction, the unconditional covenant to provide and furnish “ a full and complete cargo of dry hides,” would seem to be unmeaning.
By one clause, the plaintiffs covenant to take and receive on board “all such lawful goods,” &e., as the defendants “may think proper, to ship, any thing extra hazardous or contraband of war excepted.”
By another, the defendants covenant to provide and furnish “ a full and complete cargo of dry hides.” This covenant is not even qualified with the condition that such a cargo can be procured.
Then follows the clause, which professes to fix the price to be paid “ for the charter or freight of the said vessel during the voyage aforesaid.” And that is fixed by a stipulated, rate to be paid “for the hides,” viz., £6 per ton of 2,240 lbs.
I think it may be said in this case as was said in Capper et al. v. Forster, (3 Bing. N. C., 938,) that “ the original intention and expectation of the parties at the time the charter was entered into as to the amount of freight which would become payable *473 for the voyage, must have been founded upon the assumption, that the ship would bring home a cargo consisting” of dry hides, a full and complete cargo of which, the defendants covenanted, absolutely and unconditionally to furnish. Omitting the clause, “ if other goods are shipped, freight to be at proportionate rates," that case and the present would be substantially alike.
If it was impossible to procure dry hides, still the plaintiffs would have been obliged to receive a cargo of lawful goods and merchandise. (Wilson v. Hicks, supra.) They would have no right to insist on returning empty, and then claim the whole stipulated freight.
In such a case, that is, if no dry hides could be procured and other cargo was shipped, the plaintiffs would have been entitled to recover just as much as if they had. brought a full cargo of dry hides, if the clause “if other goods are shipped, freight to be at proportionate rates,” had been omitted from the contract. Capper et al. v. Forster, supra, is a direct authority in support of this proposition.
In this view of the intent of the parties, and of this contract, the phrase “if other goods are shipped, freight to be at proportionate rates ” should be construed to mean, that the freight of “ other goods ” should be so rated and apportioned, that there would become payable “for the charterer freight of the said vessel during the voyage aforesaid” the same aggregate sum or compensation, that would have been due if the defendants had furnished a cargo of the article they absolutely covenanted to furnish, viz., dry hides.
Believing this to be the intent of the parties, and that the true construction of the contract will give effect to such intent, I think the judgment should be affirmed.
The judgment was reversed, and a new trial granted, with costs to abide the event. *

 This action was tried a second time before Mr. Justice Woodruff and a jury, in December, 1858. The same facts appeared un the second trial as on the first; except that “the going rates (of freight) for bone and bone-ash from Buenos Ayres to Southampton, were 35s. to 40s.1' The. Judge considering himself concluded by the foregoing decision refused to charge, that the *474 plaintiffs were entitled to recover the same sum, as if they had carried a full cargo of dry hides, and the plaintiffs excepted to such refusal. He “charged the jury that they should find upon the following principle or basis, namely: That as the current rate of freight at Buenos Ayres at the time the vessel received her cargo there, on dry hides from Buenos Ayres to the English channel was to the rate by the charter party agreed to be paid for dry hides, so was the current rate of freight at Buenos Ayres from that port to Southampton on bones and bone-ash to the amount which the plaintiffs were entitled to receive from the defendants, with five per cent primage added thereto. That from the amount so ascertained there was to be allowed to the defendants the amount which they had paid to the plaintiffs, and that the plaintiffs were entitled to recover only the balance thus found, with interest thereon from the time the freight was payable, which is agreed by counsel to have been June 10th, 1856. To which charge the counsel for the plaintiffs there and then excepted.”
The jury found a verdict in favor of the plaintiffs, for $244.17.
Erom the judgment entered upon that verdict, the plaintiffs appealed to the General Term. That appeal was argued at the January Term, 1859, before Bosworth, Oh. J., and Hoffman and Moncrief, J. J. The Court agreed •that the charge of the Judge conformed to the decision made by the General 'Term in July, 1858; and that the latter decision, could not with propriety, •be re-examined on such appeal, and affirmed the judgment. Bosworth, Oh. J., dissented from the decision, in other respects, on the grounds stated .in his opinion, as above reported.